May I please the court? As the district court assumed that Mr. Johnson was suffering from a serious medical need, I'll spend the bulk of my time this morning discussing the record evidence which shows a genuine dispute of material fact as to whether the defendants were deliberately indifferent to Mr. Johnson's need. You said a magic word, you said defendants plural right? Yes sir. By your notice of appeal do we only have jurisdiction about claims against Dr. Collier? Your notice of appeal says the judgment on March 6th that adopted the recommendation about Collier's motion for summary judgment. It doesn't mention MEND. Go ahead. That does not impact this court's jurisdiction your honor. For the simple reason that Mr. Johnson appealed from the judgment and that brings up for appeal any non-final orders that were previously issued by the district court including the summary judgment motion issued in favor of the MEND defendants. Well I think I read you, does your appeal notice have something in it besides of what I read? It also says that Mr. Johnson filed that pro se, he hand wrote that notice of appeal himself on a form provided by the United States courts and he lists as the first defendants on that form the MEND defendants, Dr. Leonard, Ms. Blossom. You mean in the caption at the top? In the caption, yes sir. That doesn't count right? Well it does show his intent and this court has said that one an appeal from the judgment brings up all non-final orders and also that if it is clear from the face of the notice of appeal what the appellant was intending and if the defendants briefed the merits such that they would suffer no prejudice by this court considering the appeal against them then this court will consider. What's your closest case that's good for you? I believe the closest case is Greer and that's cited throughout our reply brief. There's other cases as well particularly those saying that pro se appellants are entitled to more leeway as Mr. Johnson was in this case. Turning to the record evidence showing a genuine dispute of material fact as to whether the defendants were deliberately indifferent, I'd like to show pieces of record evidence and I'll point you to record citations when I can. First of all, the defendants failed to provide the course of treatment that Dr. Colyer himself recommended. Second, they instead administered a less efficacious form of treatment. Third, they performed that less efficacious form of treatment for non-medical reasons. And finally, they only acted to ensure Mr. Johnson received the recommended course of treatment after 14 months and after Mr. Johnson filed a formal grievance which then caused a jail administrator to intervene. So I'll start first with Dr. Colyer. Dr. Colyer diagnosed Mr. Johnson with eight cavities and each time he did so he recommended that a permanent filling be placed on the carious tooth. He also said that he would seek approval from the United States Marshals to perform that procedure. However, Dr. Colyer completed just one request form for a permanent filling during Mr. Johnson's time in the jail and that request form indicates that Dr. Colyer thought the need for a permanent filling was, quote, urgent and needed in less than two weeks. That request form was for tooth number 13. Now despite the fact that it was submitted on March 23, 2015, Dr. Colyer did not perform the permanent filling on tooth 13 until 10 months later, January 2016 and 14 months after he first diagnosed the cavity in tooth 13. Counsel, is that because we don't know whether he received authorization to perform that procedure on tooth number 13? Well, that actually brings up the third point I'd like to focus on and that's the non-medical reasons Dr. Colyer says basically required him to perform permanent fillings. Dr. Colyer relies on the United States Marshals policy which, as you stated, Judge Gross, required approvals from the United States Marshals both for temporary and permanent fillings. And according to Dr. Colyer, that policy, quote, restricted his ability to provide certain types of care to inmates that would otherwise be offered and available to a typical dental patient. For one, the reliance by Dr. Colyer on a prison policy instead of his own medical decision making to make a medical decision alone constitutes deliberate indifference. Well, Counsel, that's not true. I think you're mostly arguing delayed indifference. I don't think it alone constitutes. Excuse me. I think you need a lot more than that. I think that's true. In this case, I think there's many reasons why there's a genuine dispute of material fact that defendants were deliberate indifference, one of which is his reliance on policy. You know about his affidavit and he says temporary fillings can last 20 years. That was reasonable. I saw him 12 times in a 17-month period. I did dental exams, cleaning x-rays, one tooth extraction, temporary fillings, permanent fillings. You know what his affidavit says. Doesn't that pretty much defeat any deliberate indifference here? Well, as an initial matter, Dr. Colyer actually said that Mr. Johnson never complained after a temporary filling was performed. But the record doesn't support that statement or the statements you just cited, Judge Benton. Wait, wait, wait, wait. The record, his affidavit's in the record. His affidavit is in the record. Okay, now wait. Then you've got to come forward with something different. What did you come forward to contradict what the doctor said? Medical records, both from Dr. Colyer and the men defendants, suggest that Dr. Colyer's statement was incorrect. After temporary fillings were performed on tooth 2 and tooth 13, replacement temporary fillings were needed just months later. And after the second temporary filling was performed, tooth 2 broke just three months later. And on docket number 144 at page 11, Mr. Johnson says that tooth 13 has since been recommended for extraction. Moreover, Dr. Colyer himself admits that temporary fillings were not as effective as permanent fillings on appendix page 296, where he says that if he would have seen an approval form from the United States Marshals for permanent filling earlier, he would have performed a permanent filling at a much earlier date, thus indicating that he and his recommendation to perform further shows that a permanent filling was the most effective course of treatment here. Other than his desire to replace the temporaries with permanent, what evidence is there that the temporary fillings deviated from the professional standards of care such to rise to the level of deliberate indifference? I think there's two instances that it deviated, or two things in the record that indicates that it deviated from the standard of care. First of all, that citation, appendix 296 from Dr. Colyer, whom himself said that if I would have known about a permanent filling being available at an earlier date, I would have performed that instead of a temporary filling. That's different, though, then. That's saying, ideally, I would have done this had I could. At the same time, he says temporaries can last 20 years. So what evidence is there that the temporaries deviate so much from the professional standard of care? I think the other thing here, to answer your question, Judge Grunder, is that first of all, he always recommended permanent fillings be performed. So that was his choice. This is not a disagreement. This is Mr. Johnson wanting him to perform the recommendation. The other thing, though, I think that's important is, if Dr. Colyer would have decided for medical reasons that he should have performed a temporary filling. So, with respect to your first point, a disagreement about medical treatment isn't going to get you to deliberate indifference, right? Sure. Sure. But I don't think we allege that there's a mere disagreement here. We allege effectively that Dr. Colyer and the MEND defendants failed to perform the treatment that they themselves recommended. Mr. Johnson was just wanting the care that they recommended. That may be, but does that get you there as well? That they didn't perform what they wanted to perform? I do. Does that show... Let me finish. Does that show such a deviation from standard medical care as to amount to deliberate indifference? I think it does in this case for the simple reason that all of the defendants were not making medical decisions. And as the Third Circuit said in Young, which is cited in our reply brief, if you do not make a decision based on medical reasons, you are not entitled to the high bar of the deliberate indifference standard. Estelle, according to Young, assumed that the medical decision makers were making medical decisions. But if you're making decisions for non-medical reasons, then you shouldn't be entitled to that high bar of deliberate indifference. You've still got to be deliberately indifferent, though, even if you're the guard who's standing beside a prisoner. You've still got to be deliberately indifferent, right? A guard could be deliberately indifferent, if that's what you're asking, yes. I'm referring to one of our in-bank cases is what I'm referring to, so you know where I'm basing this on. So you've still got to look at deliberate indifference and not just mere negligence and not just all that stuff. Of course. What's your best evidence of real deliberate indifference? What's the smoking gun here for you? I think for Dr. Colyer specifically, and I'll turn to the men defendants next, I think there's really two smoking guns here. Dr. Colyer's contract with Sherbourne County Jail and specifically appendix page 286 shows that Dr. Colyer was compensated by the hour. Thus, he had a financial incentive to perform temporary fillings in lieu of permanent fillings, as he did here. Moreover, turning back to Judge Gross' question about the United States Marshal's policy, Dr. Colyer's reliance on the policy and the men defendants' reliance on the policy really raises more factual issues in this case because the record indicates that the policy had no impact whatsoever on Mr. Johnson's treatment for two reasons. First of all, the evidence suggests that Dr. Colyer ignored the policy. Dr. Colyer submitted four requests for fillings, three for temporary fillings and one for permanent fillings. Those appear to appendix pages 156 through 59. Now, at appendix 282, Dr. Colyer said he never saw an approval form from the United States Marshals, and in fact, he thought the approvals had been denied. Yet, Dr. Colyer continued to perform temporary fillings, and in 2016, he began to perform permanent fillings. Thus, Dr. Colyer apparently was doing whatever he was doing, and in the case, it's unclear why he wasn't performing permanent fillings instead of temporary fillings. In addition, even if the United States Marshal's policy was being followed, it would have had no impact here because, as stated the forms, which again appear at 156 through 159 of the appendix, were all approved by the Marshals within 24 hours. Thus, they could have had no impact on when Mr. Johnson received the permanent fillings or the temporary fillings. Now, the men defendants also blamed the policy for their failure to basically follow up and ensure that Mr. Johnson was receiving the care that Dr. Colyer recommended, and as the general care provider at the jail, they were responsible, solely responsible, for organizing. What's your closest case? You read my mind right there. What's your closest case on this insurer? Because now you're saying you're supposed to insure somebody else is not deliberately indifferent. What's your best case on it? I don't know if I would articulate it in that manner. That's what you just said. I don't mean to just be mean to you, but you did say the word insurer. The men defendants own failure to pursue the treatment on behalf of Mr. Johnson. I think the best case, though, Judge Benton, is the case of Mosby v. Cavey. That case is from the Western District of Wisconsin. That case... A district court case. It is a district court case. Per se. And I say it's the best case only because, from a factual standpoint, it is the most analogous. But in that case, that case involved both dentists and nurses, and they both filed for summary judgment, and the district court denied the summary judgment motion. As to the nurses, like MEND, they prescribed prescription pain medication to the inmate after dentists had recognized an immediate need for a tooth to be extracted. However, the court said that their failure to, one, modify that treatment once the inmate was not improving, and their failure to consult with the dentist to ensure that he was receiving it, the inmate, was receiving the care that the dentist recommended, amounted to deliberate indifference. The dentists, moreover, were also... A genuine dispute of material fact existed as the dentists as well, because, as I said, they recognized an urgent need for an extraction, yet they refused to extract the tooth due to what the district court said were administrative constraints. At this time, I'll reserve the remainder of my time. Thank you. Very well. May it please the court. Bradley Perlwant on behalf of the MEND defendants. The issue before this court today, the primary issue, is whether or not plaintiff has presented a genuine issue of material fact on his Eighth Amendment claim. Judge Benton, you already hit on the other issue that the MEND defendants have raised, which is whether or not this court has jurisdiction in the first instance, given the limited time that the MEND defendants have. Address the Greer case. Excuse me, Your Honor? Address the Greer case. He says Greer is the best case for him. Your Honor, I think if you look to the case that the MEND defendants cite, the Boesley case, that is more on point. Well, I'd like you to address the Greer case. Are you familiar with the Greer case? I think it was in his reply brief. I apologize, Your Honor. I am not familiar with the specifics of the Greer case. I believe the Boesley v. Kearney case is directly on point, and in that case, the notice of appeal plaintiffs hereby appealed to the Eighth Circuit from the final judgment entered on January 27th, 1997, and the order filed on January 24th, 1997. That's the exact same case we have here, where the plaintiff filed a notice of appeal stating appealing from the judgment, and then went on to enunciate a specific order. I sure thought we had cases that said if you appeal the judgment, that encompasses all prior orders in the case. And, Your Honor, that may be the case. I would stand on the Boesley case as standing for the proposition that this Court doesn't have jurisdiction based on the notice of appeal that the plaintiff passed on. Well, the difference here is that the pro se added the final phrase that adopted the report and recommendation of the magistrate, granting Collier's motion. Correct. Do we read the first part of it? The judgment entered on March 6th. That's all of it, right? That is how plaintiff is interpreting it. I'm sorry. If you stopped, it had a period, and said the judgment entered on March 6th, period, it'd be okay, right? It very well could be, but because he went on to enunciate. But because he says that, right? Correct, Your Honor. And you say that is essential and restricts the previous. That's correct, Your Honor. This Court has said- Okay, what's your closest case on that? Kearney doesn't say that, does it? Boesley v. Kearney School District. That's correct, Your Honor. What it says is it's not a mere technicality failure to list a specific order. And so because he failed to list a specific order that he's intending to appeal, this Court's deprived of jurisdiction. Your Honor, unless you have any more questions, I'd like to move on to the primary issue before the Court, and that is whether or not the men defendants acted with deliberate indifference towards plaintiff. Plaintiff has laid out their version of the record, and as this Court noted in Nelson v. Shuffman 603 Fed 3rd 439, if the medical records indicate treatment provided was adequate, a plaintiff cannot create a fact issue by claiming that the treatment was inadequate, which is more or less what plaintiff is doing here today. There's a disagreement over treatment, and there's a disagreement over whether or not the treatment that was prescribed or taken was the most effective. That's not the standard on an Eighth Amendment claim. It says it less obvious to a layperson in that case, right? That's an exception, correct? I'm sorry, I don't quite understand. There's an exception to the rule you just said, unless it's obvious to a layperson. Correct, Your Honor. In order for a serious medical need, it could be obvious to a layperson. And then your rule does not apply, correct? What you just stated. Correct, Your Honor, because then we're no longer looking at the word of the physician. But was this obvious to a layperson? No, it was not, Your Honor. And if we look through the record, we can tell why this was not obvious to a layperson. There at no point was any evidence of bleeding, drainage, or signs of infection. There were at least 12 examinations conducted by the MEND defendants in the record. At least 10 of them resulted in referrals to a dentist. I thought Collier did the 12 examinations. Did you say MEND did the 12 examinations? Correct, Your Honor. MEND examines inmates first, and then if they are determined to have a dental need, they're referred to a dental provider. It helps to understand the scope of what... Work with me here. Is it Collier who did the 12 times in the 17 months? Is it MEND? Or is it some combination of them? Or are there really 24 of them? Get it? There are really 24, Your Honor. Okay. So the MEND defendants on at least 12... The MEND defendants actually conducted more than 12 examinations, but on at least 12 occasions particularly noted in their records that there was no sign of infection, bleeding, drainage, these obvious signs of a serious medical issue. He was referred to Dr. Collier on 12 occasions for 12 dental exams within an approximately 17-month period. In addition, as part of those exams to determine whether or not plaintiff had a medical need, the MEND defendants on eight different occasions prescribed some sort of medication and on several other times at least followed up with Dr. Collier to determine what the course of treatment was for plaintiff. And this all demonstrates the MEND defendants are not dentists. Their scope of treatment here is to determine whether or not there's an emergent medical need such as an infection, and then if it needs to be seen by a specialist, refer it to that specialist. So the MEND doctors, though, were aware of Dr. Collier's recommendations, right? They were to some extent, yes, Your Honor. So couldn't their failure to obtain permission from the marshals in a timely manner to do that work amount to deliberate indifference? No, Your Honor, not unless it was shown that that delay somehow caused the plaintiff to suffer some sort of harm. The standard with a delay is to measure the objective seriousness of the deprivation by reference to the effect of the delay in treatment. So unless there's some sort of medical evidence coming forth showing that by ignoring the referral to the dentist that it somehow escalated the situation that plaintiff was dealing with, there's nothing in the record to suggest that by failing to obtain some sort of authorization from the marshals, that plaintiff somehow now has a worse mouth issue. Our cases, particularly Holden, that you rely on, keep saying delays adversely affected his prognosis. What do you think that means? It can be deliberate indifference if the delays adversely affected his prognosis. Your Honor, adversely affects his prognosis, to me, would suggest a detriment to his ability to recover, a detriment to his ability to be treated for whatever his medical need is. And there's no evidence here that because there was some sort of delay in being seen, which the men defendants would actually dispute actually occurred, that somehow he's now worse for the wear. For example, if this court were to look to either the Boyd v. Knox case where a plaintiff had an impacted wisdom tooth and the provider waited three weeks to refer him to an oral surgeon, he was much worse off because that referral did not timely occur. Now, in this case, whenever plaintiff presented with subjective pain, he was referred to the dentist based upon that, even though there was no objective signs of infection and thus no serious medical need known to the men defendants. But because they timely referred or prescribed medication and did the routine checks, then they cannot be found to have been deliberately indifference with regards to plaintiffs. Counsel, even if there was a serious medical need that was obvious to a layperson, what evidence is there that there was more than negligence on behalf of the men defendants? I don't see why you need to prove that there was no medical problem here. It seems to me that mere negligence isn't going to get the plaintiff anywhere. Your Honor, I see my time has expired. May I answer your question? Your Honor, you're exactly correct. This court can do exactly as the district court did and just assume without deciding that there's a serious medical need and then look to the deliberate indifference. There's nothing in the medical records suggesting anything akin to criminal recklessness on the part of the men defendants who, again, are just looking for medical issues and then if there is an issue, they refer it out to the dentist, which they did approximately 10 to 12 times over the course of 17 months or as much as someone might see a dentist in five years in this case. Thank you. Thank you, Mr. Perlant. Good morning, Ms. Hsu. Good morning, Your Honors. I'm Jackie Hsu, counsel for Appelli, Dr. John Collier. Given the time constraints, I'm not going to repeat the facts which are set forth in the brief and counsel eloquently put forth part of our argument, so let me move forward subject to any questions the court may have. Mr. Johnson obviously accuses Dr. Collier, too, of the Eighth Amendment violations that he also cites from MEND. What I'd like to point out to the court is I believe he can't meet either of his burdens of proof regarding the serious medical need or the deliberate indifference, which, as the court is aware, takes an objective and a subjective approach, two different prongs. Rather, Mr. Johnson paints a picture of what occurred with his dental care with a broad brush, omitting several critical and important facts that are documented in the records. He alleges that he was in constant pain and discomfort, as defined in Roberts and Berry and the Beyonce cases, and that his pain and discomfort comports with the examples cited in several of the cases, again, including Berry, Beyonce, Chance, Mosby, and the others. But if you look at the actual records and the facts in the case, they belie his claims. The medical and dental records and the actions of my client, Dr. Collier, support my client's position in this case and, to the same degree, the MEND position. Mr. Johnson's a man that was in prison and had poor dentition to begin with, as the medical records indicate. He was not a man who saw his dentist twice a year and had good dental hygiene. But he contends that my client ignored the reports of difficulty eating, sleeping, daily excruciating pain, improperly treated, my client improperly cheated, bleeding and swallowing gums, and his own self-diagnosed tooth decay. But the dental records don't support that. The records very clearly document that on each and every occasion when this gentleman complained, MEND evaluated and triaged him, sometimes providing medication, sometimes referring him to my client for dental care. And, by the way, to set the record straight, my facts indicate that he was referred for dental care to my physician or my doctor on 12 occasions. He actually saw my dentist 10 occasions, himself counseling two of those occasions. Well, counsel, address his main point, which is that Dr. Collier didn't even do what Dr. Collier said was needed. He said a permanent was needed. He didn't get that done for a long, long time. Is it 14 months? You've heard the other side's point. I think it was eight months, Your Honor. Eight months, but let me finish. I'm sorry. That's okay. And we have a case that says even a three-week delay in treatment, that's Boyd v. Knox, a three-week delay in dental care, if you know there's suffering, can support a deliberate indifference claim, and this is much more than three weeks. So that's my question. Yes, sir. I indeed acknowledge that, and I would tell the Court, first off, my doctor's recommendations or the dentist's recommendations were that he would have a permanent amalgam placed. In the interim, he placed two temporaries in that same tooth, which my dentist deemed sufficient. My dentist also did complete a prisoner medical request to approve that permanent filling. That dental request or that approval from the U.S. Marshals Service was not in the dental records nor passed along, and so we had no knowledge of it. I also want to say that in the affidavit supporting, my dentist went ahead and did the permanent amalgam in January of 2016 without U.S. Marshal approval and took a financial hit for that. Counsel. Yes, sir. My concern here is not that deliberate indifference has been established, but that the record seems to have conflicting evidence, and we're here on summary judgment. Yes, sir, and if I may argue that point, Your Honor. Yes, there is some conflicting evidence, and I think there's also facts that are unknown. The question for the Court under case law is whether that conflict is outcome determinative, and we would argue that it is not. We're not conceding that a factual dispute exists, but counsel plaintiff for Mr. Johnson says there's one with the prisoner medical request and also with the eight months that was wait, you know, the eight-month time period during which his client didn't have the permanent. There is no indication in the record or otherwise of any significant damage suffered by his client by the wait of the eight months. But aside of that, aside of that, it's not. What about eight months of pain? Would that not be a factor? Yes, it would be a factor, and if the Court views the medical records, you'll find that there's two sets. There's one with the man that describes a different set of circumstances than does Dr. Collier's. I want to point out, and part of my argument is that on the 12, 10, excuse me, occasions during which my physician, my dentist, met with this gentleman, you will not see any medical information and there are anything in the records about this man suffering with excruciating pain, having an infection, having any significant damage to tooth number 13 or any of the other teeth by waits for the permanent amalgams. So I am going to argue that a recommendation for treatment with a temporary interim treatment was sufficient and certainly sufficient given the fact that we know that the substance that was placed in those teeth has a history from World War II of holding up for periods that are near and over 20 years. And again, the evidence by plaintiff is not here saying, I had my tooth removed, it was cracked. So he does have some subjective argument here. There's just no additional evidence to support it. And I think the distinction between the two records is important. If I go to the dentist or if we go to the dentist and we have an opportunity to complain about all of these things, why is it inconsistent with men versus the dentist? You would think he would parallel those two and tell the dentist the same things. And there is note in the dental records of mild pain, mild tooth pain. So my dentist had no indication of anything other, and frankly from observation, and he did assess him on every single occasion. There was no indication of infection, no indication of other issues that the plaintiff raises with the men records. Doesn't your position depend upon the dental records incorporating everything that Mr. Johnson said? Yes, we have to do that, but I do point out to the court that this is a bifurcated process and it's unfortunate because what you have is the U.S. Marshal, as the court is aware. You have the men defendants who see and triage and then refer to the provider. The records for men were not in Dr. Collier's records. Thus, we have a lack of communication between these two. The question of whether that lack of communication resulted in the standard that's required by the plaintiff, I disagree that it does. But it is a problem. Can I ask a quick question on the default? Yes, sir. The reason given by your client for not responding to the summons seems a little suspect to me. Perhaps I can address that, Your Honor. Dr. Collier made a stupid mistake, and it's unfortunate. I'll tell you, and I've argued before the court, he was not arrogant. He was not indifferent to the court's authority, and he wasn't attempting to avoid the lawsuit. He mistakenly and stupidly genuinely thought that there was an error in the caption, expected the caption to be corrected, that he would be reserved by the U.S. Marshal, and then seek legal assistance. That's what I can tell the court. But I will also tell you this. He received notification of the entry of default order on December 28th. That's the very same day he showed up at my office, hired us, and we got on the ball as quick as we could to answer. So, you know, I don't have any grand excuse for that. I can tell you, obviously, from my knowledge and from our pleadings before the court, it was a dumb mistake, and we are lucky to be here today. I won't argue with that. Thank you. Subject to any questions the court may have, I would just finish up on that, and I would tell the court that we have reviewed, and I'm sure the court has thoroughly as well, the district court's entry of order summary judgment and also the district court's entry of the order vacating and reversing the magistrate's decision on allowing my client back into the lawsuit. And I would just ask the court to carefully look over the records, if you have not already. You'll see the distinction that I raised between men's medical records and Dr. Collier's records, and you'll see the distinction that I argue between his reports of how egregious he was suffering. Thank you. Thank you, Ms. Hsu. Your time has expired. That's the rebuttal time. There's a lot to unpack there, Your Honors. I'm going to focus first of all on the trivialization of Mr. Johnson's medical need by defendants and the fact that they allege there was no detriment. First of all, the men defendants who apparently claim they were not dentists themselves recognize at appendix page 103, or excuse me, 102, that Mr. Johnson was suffering from multiple dental caries that were visible to the naked eye. They also were prescribing pain medication to Mr. Johnson during his first nine months, excuse me, the first nine months of 2015. Does that defeat deliberate indifference if they're giving pain medication all the time? Because all these cases say suffering, the word suffering. Go ahead. No, I don't think it does, Your Honor. I think it does show that they thought this was a serious medical need and that a lay person would since the men defendants effectively claim they were lay people in this case. Moreover, they allege that there was no detriment to Mr. Johnson, but tooth two actually broke after receiving two temporary fillings before. In addition, at docket number 144 at pages 11 through 13, Mr. Johnson says that tooth 13 has since been recommended for extraction. During this entire time, Mr. Johnson was claiming to be in excruciating constant pain. His entire right side of his mouth hurt and that the medication that the defendants were providing, which at that time was over-the-counter medications, were not working. And that was in 2015 and 2016 after all of this treatment allegedly occurred. Moreover, the fact that it is obvious to a lay person, according to this court's case, Roberson v. Bradshaw, essentially eviscerates the need for verifying medical evidence to show the delay. As this court said in Roberson, if it's obvious to a lay person, you don't need verifying medical evidence. And in this case it was. Moreover, all of this evidence shows that by 2015, the defendants knew Mr. Johnson was suffering from an extreme amount of pain. In September 2015, Mr. Johnson notified men that his treatment was not being approved. He said the same thing in 2015. Yet it wasn't until Mr. Johnson filed a formal grievance in January 2016 and a jail administrator, Brian Frank, intervened, that the men defendants even bothered to reach out to Dr. Collier to ensure the treatment was being provided. The men defendants and Dr. Collier can't explain why the approval forms from the marshals weren't seen by Dr. Collier. They can't explain their own failure to talk to the marshals. And they can't explain why Dr. Collier thought that the marshals actually denied his approval requests. All of that shows a dispute of material fact as to their deliberate indifference. And because there was a serious medical need here, this court should reverse the district court's ruling on the motions for summary judgment. Thank you. Thank you, Mr. Essley.